hear argument in the final matter on today's calendar. Bezek v. NBC Universal, 18-1904. Thank you for your patience Ms. Bezek. Do you want to lower the microphone a little bit? Good morning, Your Honors. My name is Paola Bezek. I'm representing myself today, Pro Se. This is in the case of violation of my Title VII with NBC Universal. Your Honor, I believe the decision below should be reversed and grant relief for three reasons. There was no evidence that an arbitration agreement has been signed by the employer and employee at the time of employment. I started employment with NBC Universal and General Electric in November 2010, and there was never an arbitration agreement with employer and employee. Second, the arbitration award was confirmed by the district court. However, there was no agreement with the arbitrator whatsoever. I never waived my claims and the arbitrator never had jurisdiction over my claims. He never had personal jurisdiction as well. I'm sorry, I'm a little nervous. The district court also based their decision, their opinion on just only one letter from one employee, Mrs. Rubis, that I never met and never seen. I believe that this court should reverse the decision. Ms. Bezek, could I take you back to the first point you made about that there's no evidence that you ever agreed to arbitration? That's correct, Your Honor. I thought there was evidence in the record showing that when you accepted a new position in June of 2013, just to pick one item, you had to open an email that was an offer letter and click on an acceptance link, and then accept specific acknowledgments, one of which said, I acknowledge that I have received and reviewed a copy of Solutions, the alternate dispute resolution procedure, and I agree to resolve disputes in accordance with the terms of Solutions. And accordingly, I waive the right to pursue any covered claims against the company in court. So why is that not evidence? That's what the defendant had presented, but I don't remember that I had that ever happen. Oh, that's because you don't remember it. If they have a record of that happening, that's evidence. Now, maybe it didn't happen. I mean, that's a factual dispute, but how can you say there's no evidence when they presented evidence of that transaction? According to what I understood is that I should have been receiving an email or a paperwork with the employer, an employee, and having a physical signature, but that never happened. Why would it need a physical signature, rather than an acknowledgment by email or something? I don't know. You just don't remember. You don't remember that this ever happened. No. So we'll hear from Ms. Alexander, then you'll be able to come back, and you'll have two additional minutes to respond. Okay. Thank you. Good afternoon. May it please the Court. My name is Lori Alexander, and I represent NBC Sports and NBCUniversal in this matter. Ms. Bieseck's assertions that she made to the district court and those that she's made to this court today are exactly the kind of bare denials that this court has said in McAllister v. East are not enough to dispute a properly supported arbitration agreement. What the plaintiff has described is that… Is every employee at NBCUniversal or NBC Sports, every new employee required to click and agree to arbitrate any Title VII claim? It's not every employee, but most employees do. Can you determine which employees do and which don't? There is an arbitration program that is rolled out to almost everyone. There may be some pockets of exceptions, but I'm not sure where those are. But with respect to Ms. Bieseck, she agreed to arbitrate any and all claims when she was first hired by NBC in 2010 through her offer letter. Her offer letter indicated that her employment with NBC in the first place was expressly contingent on an agreement to be bound by solutions. And her continued employment after that time for five years indicates her assent to that agreement, and that's one of the points that the district court pointed out. Was there a requirement of a specific signature? No, there was… The signature that we produced in our motion was when she was transferred in 2013. She applied for a different position in Connecticut. And at that time, she was required, as a condition of getting the new position, to acknowledge and consent that the solutions program, including mandatory mediation and arbitration, still applied. In that case, she would be required, in order for the electronic signature to appear, to click on an email, open the attachment, review the attachment, click on accept, indicate in three acknowledgments. One, that she would agree to arbitration of any employment-related disputes, that she waived any right to go to court on any employment-related disputes. Those are two specific acknowledgments. Click on separate ones. And a third, that she had received and reviewed a copy of the solutions program so that she had an opportunity to review it. In Connecticut, it's clear, though, that a party may be bound to an arbitration agreement, even in the absence of a signature. So the signature is not required, but it is another indication that she consented to the arbitration program. So she consented in 2010. She consented again in 2013. And we produced the electronic signature from 2013. So in other words, you're not just relying on evidence of regular practice, that theoretically everyone is confronted with this agreement, and everyone, or almost everyone, or not quite everyone, or whatever, you're relying on a specific electronic signature that shows acceptance of these conditions, at least as of 2013. That's absolutely correct. And we included testimony about what would be required in order for us to have that electronic signature record, which was specific to Ms. Bazak. And it included that she would have to sign electronically, and of course, in Connecticut, an electronic signature is as good as an ink signature. But it also required her to create a unique personal identifier, and that's in the affidavit that we submitted, which would include the last four digits of her Social Security number, the month of her birth, and the day of her birth, so that each employee has a unique identifier in order to show that they acknowledged it and had access to the program at the same time. We also presented evidence that Ms. Bazak received training at the time that she, specific training at the time that she moved into her new position in 2013. And she admitted in her opposition papers that she received online HR solutions video. That's the way she described it. But there's no dispute that she was trained in solutions as well. So she acknowledged it, that her employment was subject to the arbitration program during her hire, again, during her transfer. And another requirement in order to challenge an arbitration agreement is that an individual must consistently and unambiguously deny that they are subject to arbitration. Ms. Bazak has done exactly the opposite. And as we indicated in our briefing, Ms. Bazak did many things to avail herself of the solutions process. She changed her mind later, but she started the solutions process. And after it had been going for a few months, decided that she wanted to no longer have it and started a case in federal court. We have your argument, and we'll hear from Ms. Bazak. Thank you. Your Honor, when I was given the right to sue by the EEOC on April 2017, I just went ahead and submitted my complaint with the district court. What defendants are today implying in regards to . . . I want to go back to the HR video that I actually trained on, was a sexual harassment video. It has nothing to do with solutions or arbitrations or anything in the like. I never seen the solutions, anything related with arbitration. The HR video that I seen was just in human resources. Did you go through a part of arbitration? Did you engage in a limited arbitration at some point? No, no, not at all. You went through a mediation process represented by a lawyer. Is that right? That's correct. Then it was your lawyer who asked for arbitration, and then you fired the lawyer. He actually was asking for a lot of amount of money, and it was irrational for me. When I first hired him, and we met in 2016, I told him that I had 180 days to file for my complaint in district court due to the violation of my civil rights with things related with domestic abuse. He didn't do it. That's why, actually, I was telling him to go one way, and he was going a different way. But you understand that maybe one reason he was going that way is because the Supreme Court has said that if you sign an arbitration agreement, even Title VII claims are subject to that arbitration agreement. I understand, Your Honor, what you're saying, but I know that the time is limited. But I don't have any signature. I don't have any arbitration agreement. So, Ms. Bizek, we've heard your argument, and we've heard from Ms. Alexander. We're going to reserve the decision, and so you'll get a decision from us at some later point. But thank you. And that completes today's oral argument calendar. Court is adjourned.